GEORGE J. LECHNER *v.* CHARLES HOLMBERG ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

Argued May 1—decided June 8, 1973

*Daniel R. Schaefer,* assistant attorney general, with whom were *Bradford J. Ward,* deputy chief prosecuting attorney, and, on the brief, *Robert K. Killian,* attorney general, for the appellants (defendants).

*Joseph M. Brophy,* for the appellee (plaintiff).

House, C. J. This was an action in the nature of mandamus taken to compel the defendants, who are a court reporter, a court clerk and the chief judge of the Circuit Court, to release to the plaintiff a transcript of the criminal proceedings against him in the Circuit Court, third circuit, at Danbury. The Superior Court, after a hearing on an order to show cause, issued the order of mandamus. The defendants appealed to this court.

The plaintiff was involved in an automobile accident on February 10, 1970. Criminal charges were brought against him as a result of the accident. On a trial in the Circuit Court, third circuit, at Danbury, the plaintiff was, on February 4, 1971, acquitted of the criminal charges. That court thereupon, on motion of the plaintiff,[1] ordered all information pertaining to the charges to be erased.

The plaintiff subsequently was sued in a wrongful death action in the Superior Court arising out of the automobile accident of February 10, 1970. Appar-

---

[1] The motion seems to have been superfluous, since the erasure and nondisclosure provisions of § 54-90 of the General Statutes were at that time, and still are, to be applied automatically upon acquittal.

ently having decided that a copy of the transcript of the previous criminal proceedings would be helpful in the defense of the wrongful death action, the plaintiff sought its release and filed in the Circuit Court a motion that that court order that the transcript be released to him. On November 8, 1971, the Circuit Court at Danbury (*Dean, J.*) granted the plaintiff's motion and ordered that the transcript be delivered to the plaintiff. There was no appeal from this order.

The plaintiff next requested the defendant court reporter to release the transcript to him and offered payment for it. The court reporter informed the defendant clerk of the request. The clerk, in turn, delivered the transcript notes to the defendant chief judge of the Circuit Court, who refused to release them. The present action was taken in Superior Court to compel their release.

Upon these facts the Superior Court concluded that mandamus was proper and ordered the defendants to deliver a copy of the transcript to the plaintiff. The order was based on the court's conclusions that the Circuit Court order, which had not been appealed, should have been obeyed and that § 54-90 of the General Statutes does not "refer to or include a transcript of testimony."

The defendants' assignments of error attack several paragraphs of the finding and claim that the court erred in overruling several of their claims of law and in sustaining others. In the view we take of the appeal, it is unnecessary to discuss the suggested additions to and deletions from the finding. A decision on three issues of law controls the disposition of the case: (1) Whether the Circuit Court

order of November 8, 1971, bound the defendants so that they could not relitigate the issue of whether the contents of the transcript could be divulged; (2) whether the action of mandamus is proper in the circumstances of this case; and (3) whether § 54-90 of the General Statutes prohibits disclosure of the transcript in this situation.

## I

It is apparent from the record that the trial court concluded that the Circuit Court order directing delivery of the transcript was binding on the defendants. Apparently the court concluded that that order was final and res judicata and expressly noted that no appeal had been taken from the order.[2] The fault in this reasoning lies in the fact that there is absolutely no indication that the defendants were parties or privies to that Circuit Court proceeding nor that they received notice of the plaintiff's motion or had been afforded an opportunity to present their objections and defenses. It is not totally clear from the record what was the precise nature of the proceeding in the Circuit Court; but it is clear that the order was granted on an ex parte motion in connection with the criminal case that had resulted in acquittal and a final judgment approximately nine months earlier. The prosecuting attorney may have received notice of the pendency of the motion, but he is not a party to the present mandamus action.

"It is a settled principle that a judgment in a former action between the same parties and upon

[2] In the trial court, the plaintiff argued that the chief judge of the Circuit Court, in refusing to deliver the transcript, was in fact exercising improper appellate authority, while the defendants claimed his action was supervisory and proper. We find this dispute to be irrelevant to the issues on this appeal.

the same cause of action is conclusive upon the parties to a subsequent action as to every question which was or might have been presented or determined in the former action." *State ex rel. Campo* v. *Osborn,* 126 Conn. 214, 218, 10 A.2d 687; see also *State ex rel. Howard* v. *Hartford Street Ry. Co.,* 76 Conn. 174, 179, 56 A. 506; note, 21 A.R.L.3d 206. It is also true that a judgment of the Circuit Court would be binding on the parties in a subsequent action in Superior Court, although the former is a statutory court of constitutionally limited jurisdiction. *Hartford National Bank & Trust Co.* v. *Malcolm-Smith,* 129 Conn. 67, 70, 26 A.2d 234; see *Walkinshaw* v. *O'Brien,* 130 Conn. 122, 32 A.2d 547. But "[i]t is . . . fundamental that in order to make a judgment res adjudicata as regards the issues determined in it the person claimed to be bound by it should have been a party to the first action in the same capacity that he is to the second. *Fuller* v. *Metropolitan Life Ins. Co.,* 68 Conn. 55, 65, 35 Atl. 766." *Hartford National Bank & Trust Co.* v. *Malcolm-Smith,* supra; *Kaplan* v. *Merberg Wrecking Corporation,* 152 Conn. 405, 413, 207 A.2d 732. "[D]ue process of law requires that the rights of no man shall be judicially determined without affording him a day in court and an opportunity to be heard." *State ex rel. Kelman* v. *Schaffer,* 161 Conn. 522, 526–27, 290 A.2d 327; *United Oil Co.* v. *Urban Redevelopment Commission,* 158 Conn. 364, 383, 260 A.2d 596; *Benz* v. *Walker,* 154 Conn. 74, 77, 221 A.2d 841; see also *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S. Ct. 652, 94 L. Ed. 865. Since the defendants were not parties to the Circuit Court proceeding, they cannot be held to be bound by the resulting order; that order is in effect a nullity as to the defendants. See *Jensen* v. *Nation-*

*wide Mutual Ins. Co.,* 158 Conn. 251, 260, 259 A.2d 598; *Rathkopf* v. *Pearson,* 148 Conn. 260, 265, 170 A.2d 135. The Superior Court, then, erred in concluding that the defendants were precluded from litigating the issue of whether the transcript lawfully could be disclosed.

## II

The defendants claim that the action of mandamus was not proper in this case because, it is urged, the right of the plaintiff to have the transcript disclosed to him was not clear and disclosure would involve an exercise of discretion by officials of the Circuit Court. It is true that mandamus lies only to enforce the performance of ministerial, as opposed to discretionary, duties by public officials. "If a public official or public agency has a duty to perform a particular act and fails in the discharge of that duty, a writ of mandamus is the proper remedy for compelling performance of the act. Where the official or agency is authorized to exercise a discretionary power, mandamus does not lie. *Hannifan* v. *Sachs,* 150 Conn. 162, 167, 187 A.2d 253. . . . Relief by way of mandamus, therefore, is only available to one who has a complete and immediate right that the public act be done. *Ballas* v. *Woodin,* 155 Conn. 283, 284, 231 A.2d 273." *Waterbury Teachers Assn.* v. *Furlong,* 162 Conn. 390, 414, 294 A.2d 546. The party seeking performance of the duty has the burden of establishing his clear legal right to performance. *Waterbury Teachers Assn.* v. *Furlong,* supra; *Boyko* v. *Weiss,* 147 Conn. 183, 186, 158 A.2d 253.

Here the action of mandamus was proper. Court reporters generally have the ministerial duty to

furnish transcripts to parties to an action.[3]  The narrow legal question is whether § 54-90 of the General Statutes, discussed at length below, creates a mandatory prohibition against disclosing transcripts in certain situations.  While there may have been a legitimate doubt as to the operation and effect of § 54-90, the duty of the officials did not involve an exercise of discretion; either they were required to disclose the transcript or they were prohibited from so doing.  While in a very broad sense the duty was not "clear" at the time one way or the other, one of the purposes of the action was to establish the existence of the unqualified right to performance. The court did not err, then, in concluding that the action of mandamus was proper.

## III

The final decisive issue is whether the court correctly interpreted § 54-90 of the General Statutes. In pertinent part, that statute reads: "(a)  Whenever in any criminal case the accused, by a final judgment, is found not guilty of the charge or the charge is dismissed, all police and court records and records of the state's or prosecuting attorney pertaining to such charge shall be immediately and automatically erased. . . .  (e)  The clerk of the court or chief clerk of the circuit court, as the case may be, shall not disclose to anyone information pertaining to any charge erased under any provision of this section."  The trial court concluded that these provisions did not impose on the defendant officials

---

[3] "[General Statutes] Sec. 51-61.  COURT REPORTER TO BE SWORN. DUTIES. TRANSCRIPT. . . .  Each official court reporter and assistant court reporter shall, when requested, furnish . . . to any party of record . . . a transcript of the proceedings, or such portion thereof as may be desired . . . ."  Section 51-69a of the General Statutes extends the duty to reporters of the Circuit Court.

the duty not to disclose a transcript of testimony of proceedings held pursuant to charges of which the plaintiff was acquitted. The plaintiff also argues that even if transcripts are included within the words of the statute, a party should be able to waive his "right" to nondisclosure.

Well-established principles of statutory construction govern the interpretation of § 54-90. First, where the words of a statute are unambiguous, " '[i]t is the expressed intent of the legislature which controls, and that intent is to be found in the meaning of what it says'; *Adams* v. *Vaill,* 158 Conn. 478, 483, 262 A.2d 169; and not some unexpressed or supposed state of mind of the General Assembly." *Kellems* v. *Brown,* 163 Conn. 478, 515, 313 A.2d 53. The General Assembly, further, is presumed to have enacted any statute with knowledge of existing statutes and, so far as possible, to have acted "with the intention of creating a consistent body of law." *Toll Gate Farms, Inc.* v. *Milk Regulation Board,* 148 Conn. 341, 347, 170 A.2d 883; *Knights of Columbus Council* v. *Mulcahy,* 154 Conn. 583, 589–90, 227 A.2d 413. Also, the General Assembly is presumed to have intended every statutory word and phrase to have meaning. *J & M Realty Co.* v. *Norwalk,* 156 Conn. 185, 192, 239 A.2d 534; *State* v. *Springer,* 149 Conn. 244, 248, 178 A.2d 525. Absurd results are to be avoided; *Stone* v. *Sullivan,* 154 Conn. 498, 503, 227 A.2d 76; and, "[w]hen two constructions are possible, courts will adopt the one which makes the statute effective and workable, and not one which leads to difficult and possibly bizarre results. *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508." *Muller* v. *Town Plan & Zoning Commission,* 145 Conn. 325, 331, 142 A.2d 524.

Applying these principles, it is clear that the term "all police and court records" in § 54-90 (a) includes transcripts of criminal proceedings. When § 54-90 was enacted and amended, the General Assembly is presumed to have been aware of § 51-61 of the General Statutes which, as we noted above, prescribes the duties of court reporters. That section, in part, provides that "[a]ll records of the proceedings taken on the trial of any cause shall . . . be filed with the clerk, but for the purpose of transcribing such records the court reporter may at any time withdraw the same, for a reasonable time." It is difficult to see how the process of transcription could magically change "records" into "nonrecords." Also, § 51-74 delineates the ways in which a court reporter may "make a record of the proceedings," and § 52-161 provides that "[a]n exemplified transcript of the record of any . . . court reporter . . . shall constitute a part of the official record in the cause or matter in which such . . . reporter's record was made." In light of the preexisting statutes, a definition of "records" that excludes transcripts for purposes of § 54-90 would be most inconsistent.

Practical considerations as well dictate the conclusion that § 54-90 includes transcripts. The obvious purpose of the statute is to protect innocent persons from the harmful consequences of a criminal charge of which he is subsequently acquitted. If an investigator, for example, could gain access to a transcript of criminal proceedings, he could certainly draw inferences therefrom and substantially reconstruct the entire criminal record. If this were the case, the purposes of § 54-90 would more or less be frustrated. The court erred in concluding that for the purposes of § 54-90 a transcript is not part of the "court record."

Another argument pressed by the plaintiff is that the purpose of § 54-90 is to benefit accused persons who are found innocent[4] and, in this case, the accused would be harmed by nondisclosure. The statute, however, is not directed toward a right of an accused which may be waived at his pleasure but rather toward the duty of the clerk not to disclose records subject to erasure.[5] Most significantly, § 54-90 (e) directs the clerk[6] not to "disclose to *anyone* [emphasis added] information pertaining to any charge erased . . . ." The word "anyone" would seem to embrace the entire human race, of which the plaintiff is a member. The General Assembly has the power to create exceptions but has not done so.

In express terms, the General Assembly has denied access to erased records to "anyone." It has made the legislative decision that a blanket prohibition will in the long run benefit the greater

[4] Both parties have relied to some extent on the legislative history of § 54-90. We have examined the history and have found it interesting but not particularly relevant to the issue in this case, i.e., whether the accused is entitled to disclosure. Furthermore, the legislative history is in no way inconsistent with the express language of the statute.

[5] The words "erase" and "erasure" embrace a panoply of meanings. See, e.g., Black, Law Dictionary (4th Ed.). Standing alone, § 54-90 (a) might present considerable problems of ambiguity. Section 54-90 (e), however, provides that those records "erased" shall not be disclosed to anyone. In the context of the statute, then, erasure means at the very least nondisclosure.

[6] The fact that only court clerks are expressly precluded from disclosing records does not mean that anyone else may disclose them. Clerks exercise supervisory and custodial powers with respect to court records; General Statutes § 51-52; and if a court reporter, for example, could disclose such records, § 54-90 would be substantially vitiated. In this case, the fact that the request for the transcript was made to the court reporter (who then informed the court clerk), rather than to the court clerk, is of no importance.

number of persons entitled to erasure.[7] The suggestion that the blanket prohibition may in fact harm isolated persons in some situations is not sufficient to nullify the legislative mandate. "[I]n interpreting this statute of wide application it is the general field of its operation and effect which is to be regarded rather than its application to this somewhat exceptional case, for appropriateness to the general situation is the predominant consideration. *H. Duys & Co.* v. *Tone,* 125 Conn. 300, 311, 5 A.2d 23." *Feldman* v. *Administrator,* 138 Conn. 724, 728, 89 A.2d 210.

We conclude, then, that the defendants were precluded by law from delivering the transcript to the plaintiff. Accordingly, the order of mandamus was erroneously issued and the case must be remanded with direction that judgment be rendered for the defendants.

There is error, the judgment is set aside and the case is remanded with direction to render judgment for the defendants.

In this opinion the other judges concurred.

---

[7] It has been suggested that where arrest records may be disclosed in some circumstances, it is only fair that the accused be allowed to inspect them, so that inaccurate data may be corrected. Where total nondisclosure prevails, however, the better rule may well be one denying access even to the accused. For if the accused could obtain the records, it is very possible that investigators and prospective employers would exert pressure on the accused to produce the records for their inspection; the purpose of nondisclosure statutes would, to that extent, be frustrated. It also is possible that such an exception could be abused through impersonation or other misrepresentation. See, e.g., comment, 38 U. Chic. L. Rev. 850; see also Jacobs, "Erasure of Criminal Arrest Records: The Connecticut Statute," 47 Conn. B.J. 2.