# JON L. SCHOENHORN *v*. MELODIE MOSS ET AL.
## (SC 20710)

Robinson, C. J., and McDonald, Mullins,
Ecker and Alexander, Js.

*Syllabus*

The plaintiff attorney sought a writ of mandamus to compel the defendant,
the chief court reporter for the judicial district of Stamford-Norwalk,
to produce certain transcripts that were sealed by another court in a
marital dissolution action involving different parties. In the dissolution
action, the family court had held a hearing concerning child custody,
during which it issued an oral order closing the courtroom to the public
and sealing the hearing transcripts. Following the dismissal of the disso-
lution action, the defendant declined to provide the transcripts of the
custody hearing to the plaintiff, and the plaintiff commenced the present

Schoenhorn *v.* Moss

mandamus action against the defendant individually and in her official capacity as chief court reporter, seeking an injunction compelling the defendant, pursuant to statute (§ 51-61 (c)), to produce those transcripts. The trial court granted the defendant's motion to dismiss and rendered judgment dismissing the action for lack of subject matter jurisdiction. Relying on *Valvo* v. *Freedom of Information Commission* (294 Conn. 534), in which this court concluded that a trial court presiding over an administrative appeal did not have subject matter jurisdiction to overturn sealing orders issued by another court in an unrelated case involving different parties, the trial court in the present case concluded that the plaintiff's mandamus action constituted an impermissible collateral attack on the family court's sealing order, and, therefore, the action was nonjusticiable because no practical relief was available to the plaintiff. On appeal from the trial court's judgment of dismissal, the plaintiff claimed that the trial court incorrectly had determined that his action was nonjusticiable.

*Held* that the trial court properly dismissed the plaintiff's mandamus action on the ground that it was nonjusticiable, as the trial court could not afford the plaintiff any practical relief:

The plaintiff's action seeking to compel the defendant to produce the transcripts at issue constituted an impermissible collateral attack on a sealing order issued by a different court in a different action involving different parties.

The plaintiff's mandamus action, like the administrative appeal in *Valvo*, did not adequately protect the interests of all affected parties, such as the children in the marital dissolution action whose custody was the subject of the hearing at issue, and, because the trial court in the present case had no continuing jurisdiction over the marital dissolution action and no custody or control over the sealed transcripts, it had no authority to overturn the family court's sealing order.

This court's conclusion that the plaintiff's action was nonjusticiable accorded not only with *Valvo* and the principles cited therein but also with this court's deep-rooted public policies favoring consistency and stability of judgments, the orderly administration of justice, and the prevention of inconsistent rulings.

Moreover, although the plaintiff claimed that *Valvo* was distinguishable from the present case because a trial court's powers in a mandamus action are broader than they are in an administrative appeal and that his mandamus action was justiciable by virtue of a trial court's broad, equitable powers to issue a writ of mandamus, the mere fact that the plaintiff sought a writ of mandamus did not relieve him from proving that his claim was justiciable, and when a plaintiff brings an impermissible collateral attack on another court's sealing order by way of a mandamus

347 Conn. 501 AUGUST, 2023 503

Schoenhorn *v.* Moss

action, no practical relief can be granted, and the court lacks competency to adjudicate the matter.

The plaintiff's reliance on *Lechner* v. *Holmberg* (165 Conn. 152), in which this court recognized that an action for a writ of mandamus is the proper vehicle for compelling the production of court transcripts, was misplaced, as that case does not stand for the broad proposition that a plaintiff can bring a mandamus action requesting the trial court to revoke, undo, or ignore a sealing order imposed by a different court in a separate proceeding.

Furthermore, there was no merit to the plaintiff's claim that a collateral attack on the family court's sealing order was permissible in this case on the ground that the order was void ab initio in light of the family court's failure to follow certain procedures set forth in the rule of practice (§ 25-59) governing the closure of courtrooms in family matters, which, in turn, deprived the family court of subject matter jurisdiction to close the courtroom and to seal the transcripts, as this court could not conclude that the family court's jurisdiction over the marital dissolution action was so lacking as to be entirely obvious.

In addition, even if the family court had violated the rules of practice in issuing the sealing order, any error in applying the rules of practice is not even arguably jurisdictional and does not affect a trial court's competency to adjudicate the type of action before it, and, accordingly, the family court's sealing order was not void ab initio and was not open to collateral attack.

(*One justice concurring separately*)

Argued March 22—officially released August 8, 2023

*Procedural History*

Action for a writ of mandamus to compel the defendants to produce transcripts of certain court proceedings, brought to the Superior Court in the judicial district of Hartford, where the court, *Sheridan, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed. *Affirmed.*

*Jon L. Schoenhorn*, self-represented, the appellant (plaintiff).

*Emily Adams Gait*, assistant attorney general, with whom were *Robert J. Deichert*, assistant attorney general, and, on the brief, *William Tong*, attorney general,

Schoenhorn *v.* Moss

and *Alma Rose Nunley*, assistant attorney general, for the appellees (defendants).

*Opinion*

ALEXANDER, J. The plaintiff, Attorney Jon L. Schoenhorn, appeals[1] from the judgment of the trial court dismissing his action for a writ of mandamus[2] ordering the defendant, Melodie Moss, the chief court reporter for the judicial district of Stamford-Norwalk, to produce certain transcripts that were sealed by another trial court in a separate proceeding involving different parties. The plaintiff claims that the trial court incorrectly determined that his action was nonjusticiable and, therefore, the court lacked subject matter jurisdiction over it. We disagree and affirm the judgment of the trial court.

The record reveals the following facts and procedural history. In 2017, Jennifer R. Dulos commenced a marital dissolution action against her husband, Fotis Dulos, in the family division of the Superior Court in the judicial district of Stamford-Norwalk (family court). *Dulos* v. *Dulos*, Superior Court, judicial district of Stamford-Norwalk, Docket No. FST-FA-17-5016797-S. As a part of that proceeding, the family court conducted a hearing on May 14 and 17, 2019, relating to the custody of the Dulos children. At the commencement of the hearing, the family court issued an oral order closing the courtroom to the public and sealing the hearing transcripts. On February 4, 2020, following the death of Fotis Dulos, the family court rendered a judgment of dismissal in

---

[1] The plaintiff appealed to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] General Statutes § 52-485 (a) provides: "The Superior Court may issue a writ of mandamus in any case in which a writ of mandamus may by law be granted, and may proceed therein and render judgment according to rules made by the judges of the Superior Court or, in default thereof, according to the course of the common law."

Schoenhorn *v.* Moss

the Dulos marital dissolution action. The transcripts of the hearing are the subject of this appeal.

In April, 2021, the plaintiff commenced the present mandamus action in the Superior Court in the judicial district of Hartford, against the defendant, individually and in her official capacity as the chief court reporter for the judicial district of Stamford-Norwalk, after she declined to produce the transcripts to the plaintiff. In his complaint, the plaintiff sought an injunction compelling the defendant, pursuant to General Statutes § 51-61 (c),[3] to produce the transcripts. The defendant thereafter filed a motion to dismiss, arguing that the trial court lacked subject matter jurisdiction to issue the writ of mandamus because to grant the requested relief would require the trial court to overturn the family court's order sealing the transcripts. In support of her motion, the defendant attached certified transcript pages from the hearing that contained the family court's oral ruling sealing the transcripts and closing the courtroom to the public.[4]

The trial court granted the defendant's motion to dismiss and rendered judgment dismissing the action for lack of subject matter jurisdiction. Relying on *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 985 A.2d 1052 (2010), the trial court concluded that

[3] General Statutes § 51-61 (c) provides: "Each official court reporter and court recording monitor shall, when requested, furnish to the court, to the state's attorney, to any party of record and to any other person, within a reasonable time, a transcript as may be desired, except that, if the proceedings were closed to the public, such official court reporter or court recording monitor shall not furnish such transcript to such other person unless the court in its discretion determines that such disclosure is appropriate."

[4] The defendant represents that the attached transcript pages were sealed due to "clerical error" and that, after the error was discovered but before the defendant filed her motion to dismiss, the defendant sent the plaintiff an electronic copy of the portion of the hearing that was not under seal. The plaintiff claims that he became aware of the sealing order for the first time when the defendant attached the transcript pages to her motion to dismiss.

Schoenhorn *v.* Moss

"[t]he plaintiff's . . . mandamus [action was] nothing more than an impermissible collateral attack on the sealing order imposed by the [family] court," and, therefore, the action was "nonjusticiable because no practical relief [was] available to the plaintiff . . . ."

On appeal, the plaintiff contends that the trial court incorrectly determined that *Valvo* required dismissal of his mandamus action. The plaintiff argues that, in *Lechner* v. *Holmberg*, 165 Conn. 152, 157–58, 328 A.2d 701 (1973), this court recognized that an action for a writ of mandamus is an appropriate vehicle for compelling the production of judicial transcripts. The plaintiff further argues that *Valvo* is inapposite because, unlike the sealing order in that case, which was properly issued, the order in *Dulos* violated Practice Book § 25-59 and the constitutional principles underlying that section, rendering the order void ab initio.[5] The plaintiff argues that, because the sealing order in *Dulos* was void from its inception, the trial court in the present case had subject matter jurisdiction to issue the writ of mandamus. We conclude that the plaintiff's action is nonjusticiable.[6]

[5] Practice Book §§ 25-59 and 25-59A govern closure of courtrooms and sealing of files in family matters, respectively. The plaintiff relies on § 25-59 (a), which provides that, "[e]xcept as otherwise provided by law, there shall be a presumption that courtroom proceedings shall be open to the public" and § 25-59 (b), which provides that, "[e]xcept as provided in this section and except as otherwise provided by law, the judicial authority shall not order that the public be excluded from any portion of a courtroom proceeding."

[6] As a preliminary matter, the plaintiff asks this court not to take judicial notice of the certified transcript pages from the hearing. He argues that the trial court erred in basing its decision to dismiss the action on those pages without first conducting an evidentiary hearing to determine how the "clerical error" was discovered and how the transcript was obtained by the Office of the Attorney General. See footnote 4 of this opinion. We disagree. It is well established that courts can take judicial notice of court transcripts. See, e.g., *State* v. *Gore*, 342 Conn. 129, 139 n.9, 269 A.3d 1 (2022). In addition, because the plaintiff did not produce any contrary evidence to contest that a sealing order had, in fact, been imposed, the trial court was permitted to rely on the transcript and to dismiss the plaintiff's action without further

Schoenhorn *v.* Moss

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . In ruling on a motion to dismiss for lack of subject matter jurisdiction, the trial court must consider the allegations of the complaint in their most favorable light . . . including those facts necessarily implied from the allegations . . . ." (Internal quotation marks omitted.) *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 522, 187 A.3d 1154 (2018). "[T]he plaintiff bears the burden of proving subject matter jurisdiction, whenever and however [that issue is] raised." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 265 Conn. 423, 430 n.12, 829 A.2d 801 (2003).

"Because courts are established to resolve actual controversies, before a claimed controversy is entitled to a resolution on the merits it must be justiciable. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant. . . . As we have recognized, justiciability . . . implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter. . . . [B]ecause . . . justiciability raises a question of law, our appellate review is plenary." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 254–55, 990 A.2d 206 (2010).

proceedings. See, e.g., *Conboy* v. *State*, 292 Conn. 642, 652, 974 A.2d 669 (2009) ("[i]f . . . evidence submitted in support of a defendant's motion to dismiss conclusively establish[es] that jurisdiction is lacking, and the plaintiff fails to undermine this conclusion with counteraffidavits . . . or other evidence, the trial court may dismiss the action without further proceedings" (citation omitted)).

"In deciding whether the plaintiff's complaint presents a justiciable claim, we make no determination regarding [the complaint's] merits. Rather, we consider only whether the matter in controversy [is] capable of being adjudicated by judicial power according to the aforestated well established principles." (Internal quotation marks omitted.) *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 525.

In *Valvo*, this court concluded that a trial court presiding over an administrative appeal did not have subject matter jurisdiction to overturn sealing orders issued by another trial court in an unrelated case involving different parties. *Valvo* v. *Freedom of Information Commission*, supra, 294 Conn. 543. We stated that to conclude otherwise would be "completely unworkable"; id.; because "[o]ur jurisprudence concerning the trial court's authority to overturn or to modify a ruling in a particular case assumes, as a proposition so basic that it requires no citation of authority, that any such action will be taken only by the trial court with continuing jurisdiction over the case, and that the only court with continuing jurisdiction is the court that originally rendered the ruling. . . . This assumption is well justified in light of the public policies favoring consistency and stability of judgments and the orderly administration of justice. . . . It would wreak havoc on the judicial system to allow a trial court in an administrative appeal to second-guess the judgment of another trial court in a separate proceeding involving different parties, and possibly to render an inconsistent ruling. This is especially true when a direct challenge to the original ruling can be made by any person at any time in the trial court with continuing jurisdiction, as is the case with sealing orders." (Citations omitted; footnote omitted.) Id., 543–45. Of particular concern to this court was the fact that the interests of all of the affected parties may not be adequately protected in a collateral

Schoenhorn *v.* Moss

proceeding. See id., 545 ("it is by no means clear that procedures adequate to protect the interests of all affected parties could even be devised in such a proceeding"); id., 545 n.13 ("[t]he trial court . . . would have no jurisdiction to order the trial courts that issued the sealing orders to do anything unless those courts and the parties in the underlying cases were named as parties in this administrative appeal, which they were not"). In light of the foregoing, we held that, because the trial court in *Valvo* did not have continuing jurisdiction over the cases in which the sealing orders were imposed or custody or control over the sealed documents, and because the interests of all parties affected by the sealing orders were not adequately represented in the appeal, the trial court was without jurisdiction to adjudicate the plaintiffs' claim. Id., 545.

In the present case, we agree with the defendant that the plaintiff's action is nonjusticiable because no relief can be granted to him by the trial court. The plaintiff sought an injunction by way of a writ of mandamus to compel the defendant to produce transcripts that were sealed by another trial court in a separate proceeding involving different parties. The plaintiff's action is, therefore, a collateral attack on a sealing order imposed by a different court in a different action, which is not permissible. See, e.g., *U.S. Bank National Assn.* v. *Crawford*, 333 Conn. 731, 741 n.7, 219 A.3d 744 (2019) ("a party may not bring an action in the [trial court] effectively asking that court to review a ruling of another trial court in another case"); *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 527 (declaratory judgment action seeking to undo another trial court's protective order was nonjusticiable); *Traylor* v. *State*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X03-HHD-CV-16-5042400-S (June 6, 2017) ("to the extent the plaintiff asserts claims for declaratory and injunctive relief

Schoenhorn *v.* Moss

whereby he seeks to have this court overturn, revoke, ignore, or reverse the actions of another [trial court] in another action, or even an action taken by the Appellate Court, those claims are clearly nonjusticiable'').

Furthermore, the present mandamus action, like the administrative appeal in *Valvo*, does not adequately protect the interests of all affected parties, such as the Dulos children, whose custody is the subject of the sealed transcripts. See *Valvo* v. *Freedom of Information Commission*, supra, 294 Conn. 545 (''it is by no means clear that procedures adequate to protect the interests of all affected parties could even be devised in such a proceeding''); see also id., 545 n.13 (''the trial court . . . would have no jurisdiction to order the trial courts that issued the sealing orders to do anything unless those courts and the parties in the underlying cases were named as parties in this . . . appeal, which they are not''). Because the trial court in the present case had no continuing jurisdiction over the Dulos marital dissolution action and no custody or control over the sealed transcripts, it had no authority to overturn the family court's sealing order. Our conclusion accords not only with *Valvo* and the principles cited therein but also with our deep-rooted public policies favoring ''consistency and stability of judgments,'' ''the orderly administration of justice,'' and the prevention of inconsistent rulings.[7] Id., 545; see also id. (collateral attack is impermissible when ''direct challenge to the original ruling can be made by any person at any time in the trial court with continuing jurisdiction, as is the case with sealing orders''); cf. *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 220–21, 884 A.2d 981 (2005) (Nonparties could intervene in withdrawn cases

[7] As we explained in *Valvo*, we do not suggest that ''a ruling may be overturned or modified only by the same *judge* that issued the original ruling.'' (Emphasis in original.) *Valvo* v. *Freedom of Information Commission*, supra, 294 Conn. 543 n.11.

Schoenhorn *v.* Moss

to challenge protective orders when the trial court that
issued the orders "had inherent power to vacate or
modify [them] in the withdrawn cases—even though
[presumably], by operation of [the applicable statute],
the court otherwise had been divested of its authority
to affect the substantive rights of the parties to those
cases—as long as those protective orders remained in
effect. To conclude otherwise would . . . ignore both
the court's inherent common-law authority to vacate
or modify its own equitable orders and the . . . public
interest in documents filed with the court in connection
with its adjudicatory function.")

The plaintiff argues that *Valvo* is distinguishable from
the present case because it involved an administrative
appeal, whereas the present case involves an action for
a writ of mandamus. The plaintiff contends that a
court's powers in a mandamus action are not as limited
as they are in an administrative appeal.[8] The plaintiff
asserts that, given a trial court's broad equitable powers
to issue a writ of mandamus and our decision in *Lechner*,
in which we acknowledged that an action for a writ of
mandamus is the proper vehicle for obtaining court
transcripts; *Lechner* v. *Holmberg*, supra, 165 Conn.
157–58; his action is justiciable because practical relief
is available to him. We disagree.

General Statutes § 52-485 (a) provides that "[t]he
Superior Court may issue a writ of mandamus in any
case in which a writ of mandamus may by law be
granted, and may proceed therein and render judgment
according to rules made by the judges of the Superior

---

[8] The plaintiff relies on this factual difference and other differences to
argue that *Valvo* should not control the outcome of the present case. We
are not persuaded. Our holding in *Valvo* was largely premised on the well
established principles concerning a trial court's continuing jurisdiction over
its own rulings, the importance of fairness to all interested parties, the
orderly administration of justice, and consistency and stability of judgments.
See *Valvo* v. *Freedom of Information Commission*, supra, 294 Conn. 545.

Schoenhorn *v.* Moss

Court or, in default thereof, according to the course of the common law.'' Although the statute confers broad power on our trial courts to issue writs of mandamus, it cannot be used as a vehicle to create jurisdiction where it does not otherwise exist. See, e.g., *Connecticut Pharmaceutical Assn., Inc.* v. *Milano*, 191 Conn. 555, 559, 468 A.2d 1230 (1983) (''[a] trial court that has *the competency to adjudicate* what duties can be compelled by mandamus has subject matter jurisdiction'' (emphasis added)).

In this regard, this court's decision in *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 515, is instructive. In that case, we held that a declaratory judgment action before a trial court seeking to undo another trial court's protective order was nonjusticiable because no practical relief could be granted. Id., 527. Although broad power to issue a declaratory judgment is vested in our trial courts under General Statutes § 52-29 (a),[9] we held that ''[a] declaratory judgment action is not . . . a procedural panacea for use on all occasions, but, rather, is limited to solving justiciable controversies. . . . Invoking § 52-29 does not create jurisdiction where it would not otherwise exist.'' (Internal quotation marks omitted.) Id., 524. Looking to our prior jurisprudence, we emphasized that, although ''the declaratory judgment procedure . . . may be employed in a justiciable controversy . . . the determination of the controversy must be capable of resulting in practical relief . . . .'' (Internal quotation marks omitted.) Id.; see also *Wilson* v. *Kelley*, 224 Conn. 110, 116, 617 A.2d 433 (1992) (''[A] declaratory judgment must rest on some cause of action that would be cognizable in a nondeclaratory suit. . . . To hold otherwise

[9] General Statutes § 52-29 (a) provides: ''The Superior Court in any action or proceeding may declare rights and other legal relations on request for such a declaration, whether or not further relief is or could be claimed. The declaration shall have the force of a final judgment.''

Schoenhorn *v.* Moss

would convert our declaratory judgment statute and
rules into a convenient route for procuring an advisory
opinion on [nonjusticiable] question*s* . . . and would
mean that the . . . statute and rules created substan-
tive rights that did not otherwise exist.'' (Citations omit-
ted.)).

Likewise, a writ of mandamus is not ''a procedural
panacea for use on all occasions''; (internal quotation
marks omitted) *Mendillo* v. *Tinley, Renehan & Dost,
LLP*, supra, 329 Conn. 524; and does not relieve the
plaintiff from justiciability requirements. As we have
explained, justiciability goes to a court's competency
to adjudicate a particular matter. See, e.g., *Connecticut
Coalition for Justice in Education Funding, Inc.* v.
*Rell*, supra, 295 Conn. 254. When justiciability is raised,
the burden rests on the plaintiff to show that his or her
claim is justiciable, regardless of the nature of the claim
or procedural vehicle utilized in pursuing it. See, e.g.,
*Fort Trumbull Conservancy, LLC* v. *New London*, 265
Conn. 430 n.12; see also *Wozniak* v. *Colchester*, 193
Conn. App. 842, 853–54, 220 A.3d 132 (conducting justi-
ciability analysis with respect to mandamus action and
concluding that appeal was not moot), cert. denied, 334
Conn. 906, 220 A.3d 37 (2019). Accordingly, when a
plaintiff brings an impermissible collateral attack on
another trial court's sealing order by way of an action
for a writ of mandamus, no practical relief can be
granted, and the court lacks the competency to adjudi-
cate the matter.

For the same reason, the plaintiff's reliance on *Lechner*
is unavailing. In *Lechner*, the plaintiff brought a manda-
mus action to compel the release of certain transcripts
in the possession of the court reporter, court clerk, and
chief judge of the Circuit Court after the Circuit Court
had ordered that the transcripts be released to him.
*Lechner* v. *Holmberg*, supra, 165 Conn. 154. We con-
cluded that, because ''[c]ourt reporters generally have

Schoenhorn *v.* Moss

a ministerial duty to furnish transcripts to parties," a mandamus action was proper to compel the defendants to produce the transcripts. Id., 157–58. We, however, ultimately reversed the trial court's grant of mandamus in light of our determination that the defendants were precluded by statute from producing the transcripts. Id., 162. Contrary to the plaintiff's assertion, *Lechner* does not stand for the broad proposition that a plaintiff can bring a mandamus action requesting the trial court to revoke, undo, or ignore a sealing order imposed by a different trial court in a separate proceeding. Although an action for a writ of mandamus is a proper vehicle for obtaining court transcripts, that is so only when the action is not a collateral attack on a court order entered in a different case.[10]

Finally, the plaintiff contends that a collateral attack on the sealing order issued by the family court is permissible under the circumstances of this case because the oral sealing order was void ab initio. In support of his contention, the plaintiff argues that the family court's failure to follow certain procedures for closing the courtroom to the public under Practice Book § 25-59 deprived the court of subject matter jurisdiction to close the courtroom and to seal the transcripts. We disagree.

Generally, "[a]s a matter of law, in the absence of jurisdiction over the parties, a judgment is void ab initio and is subject to both direct and collateral attack." (Internal quotation marks omitted.) *Reiner, Reiner & Bendett, P.C.* v. *Cadle Co.*, 278 Conn. 92, 99 n.7, 897 A.2d 58 (2006). In *Sousa* v. *Sousa*, 322 Conn. 757, 143

---

[10] The plaintiff also argues that the defendant has a mandatory duty under *Lechner* and § 51-61 (c) to produce the transcripts because the family court's sealing order is unlawful. The legality of the family court's sealing order does not change the fact that an order is in place, which precludes the defendant from producing the transcripts under § 51-61 (c). The plaintiff's argument further exemplifies that he is seeking a collateral review of the family court's sealing order.

Schoenhorn *v.* Moss

A.3d 578 (2016), this court held that "it is now well
settled that, [u]nless a litigant can show an absence of
subject matter jurisdiction that makes the prior judg-
ment of a tribunal *entirely invalid*, he or she must
resort to direct proceedings to correct perceived wrongs,"
rather than to a collateral proceeding. (Emphasis in
original; internal quotation marks omitted.) Id., 771–72.
We concluded that, to sustain a collateral attack on
a judgment, the lack of jurisdiction must be "entirely
obvious" and that the alleged deficiency "must amount
to a fundamental mistake that is so plainly beyond the
court's jurisdiction that its entertaining the action was a
manifest abuse of authority." (Internal quotation marks
omitted.) Id., 773; see also id. ("[o]ur cases demonstrate
that it is extraordinarily rare for a tribunal's jurisdiction
to be so plainly lacking that it is entirely obvious [that
a court lacks subject matter jurisdiction]" (internal quo-
tation marks omitted)); *Vogel* v. *Vogel*, 178 Conn. 358,
363, 422 A.2d 271 (1979) ("A court does not truly lack
subject matter jurisdiction if it has competence to enter-
tain the action before it. . . . Lesser irregularities do
not make a final judgment void." (Internal quotation
marks omitted.)).

Under the standard set forth in *Sousa*, we cannot
conclude that the family court's jurisdiction over the
Dulos marital dissolution action was so lacking as to
be entirely obvious. To the contrary, our trial courts
have the broad power and competence to adjudicate
dissolution matters, to close their courtrooms to the
public, and to issue sealing orders. See, e.g., General
Statutes § 46b-1 (a) (family relations matters, including
marital dissolution actions, are within jurisdiction of
trial court); General Statutes § 46b-11 ("Any case which
is a family relations matter may be heard in chambers
or, if a jury case, in a courtroom from which the public
and press have been excluded, if the judge hearing
the case determines that the welfare of any children

Schoenhorn *v.* Moss

involved or the nature of the case so requires. The records and other papers in any family relations matter may be ordered by the court to be kept confidential and not to be open to inspection except upon order of the court or judge thereof for cause shown.''); General Statutes § 46b-49 (''When it considers it necessary in the interests of justice and the persons involved, the court shall, upon the motion of either party or of counsel for any minor children, direct the hearing of any [family relations] matter . . . to be private. The court may exclude all persons except the officers of the court, a court reporter, the parties, their witnesses and their counsel.''); see also Practice Book § 25-59 (governing closure of courtrooms in family matters); Practice Book § 25-59A (governing sealing of files and limiting disclosure of documents in family matters). Accordingly, because the family court had subject matter jurisdiction over the Dulos marital dissolution action, it had jurisdiction to issue the sealing order.

The plaintiff argues that the family court's sealing order is void ab initio because the court violated Practice Book § 25-59 in issuing the order.[11] We disagree. An error in applying such rules of practice or statutory procedures is not even arguably jurisdictional and does not affect a trial court's competency to adjudicate the type of action before it.[12] See, e.g., *Meinket* v. *Levinson*, 193 Conn. 110, 115, 474 A.2d 454 (1984) (''[In] this

---

[11] We express no opinion as to whether the family court violated any rule of practice in issuing the sealing order. See, e.g., *Mendillo* v. *Tinley, Renehan & Dost, LLP*, supra, 329 Conn. 525 (''In deciding whether [a] complaint presents a justiciable claim, we make no determination regarding merits. Rather, we consider only whether the matter in controversy [is] capable of being adjudicated by judicial power according to the aforestated well established principles'' (Internal quotation marks omitted.))

[12] The plaintiff also argues that the family court's sealing order is void ab initio because the family court's issuance of the order was in derogation of the constitutional principles that underlie Practice Book § 25-59. Again, we reiterate that the family court's sealing order is not open to a collateral attack under the standard set forth in *Sousa*.

appeal, the defendant attacks the validity of the original judgment on the ground that the trial court rendered judgment without requiring the plaintiff to produce either an affidavit of debt or live testimony at a hearing in damages. The defendant claims that by virtue of this error the judgment was in excess of [the trial court's] jurisdiction, and therefore [the judgment is] unenforceable. We disagree. Such an error in applying the [rules of practice] governing judgments following default is not even arguably jurisdictional. . . . [*A*] *court does not truly lack subject matter jurisdiction if it has competence to entertain the action before it.*'' (Emphasis added; internal quotation marks omitted.)); see also *Amodio* v. *Amodio*, 247 Conn. 724, 729–30, 724 A.2d 1084 (1999) (''[Section] 46b-1 . . . provides the [trial court] with plenary and general subject matter jurisdiction over legal disputes in 'family relations matters,' including alimony and support. General Statutes § 46b-86 (a) provides the trial court with continuing jurisdiction to modify support orders. Together, therefore, these two statutes provided the trial court with subject matter jurisdiction [to modify support orders]. Separate and distinct from the question of whether a court has jurisdictional power to hear and determine a support matter, however, is the question of whether a trial court *properly* applies § 46b-86 (a), that is, properly exercises its statutory authority to act.'' (Emphasis in original; footnotes omitted.)). See generally *Reinke* v. *Sing*, 328 Conn. 376, 390, 179 A.3d 769 (2018) (following reasoning in *Amodio* concerning distinction between jurisdiction and exercise of authority). As such, the family court's order sealing the transcripts in *Dulos* was not void ab initio and is not open to collateral attack.

In light of the foregoing, we conclude that the trial court did not err in dismissing the plaintiff's action for a writ of mandamus on the ground that it was nonjusticiable.

Schoenhorn *v.* Moss

The judgment is affirmed.

In this opinion ROBINSON, C. J., and MCDONALD and MULLINS, Js., concurred.

ECKER, J., concurring in the judgment. I agree with the majority that the plaintiff, Jon L. Schoenhorn, is not entitled to relief because his action for a writ of mandamus is an impermissible collateral attack on a sealing order imposed in a different action. I write separately because I have serious doubts about whether the justiciability doctrine applied by the majority, which it borrows from *Valvo* v. *Freedom of Information Commission*, 294 Conn. 534, 543–45, 985 A.2d 1052 (2010), and its progeny, provides the appropriate analytic framework to decide these cases. I also question whether the majority's analysis pertains to the subject matter jurisdiction of the trial court or whether, instead, it is a prudential limitation on the trial court's authority to grant relief. Because these issues have not been raised by the parties or briefed and argued on appeal, I concur in the judgment affirming the trial court's dismissal of the plaintiff's action.

As the majority correctly points out, in *Valvo*, this court held that a trial court does not have the "authority to overturn sealing orders issued by another trial court in a separate case" because "[i]t would wreak havoc on the judicial system to allow a trial court . . . to second-guess the judgment of another trial court in a separate proceeding involving different parties, and possibly to render an inconsistent ruling." Id., 543, 545. Indeed, it would be "completely unworkable" and unnecessary to permit such a collateral attack "when a direct challenge to the original ruling can be made by any person at any time in the trial court with continuing jurisdiction . . . ." Id. Notably, in *Valvo*, we characterized the plaintiff's collateral challenge as moot and

Schoenhorn *v.* Moss

"nonjusticiable because no practical relief [was] available . . . ." Id., 548; see also *Mendillo* v. *Tinley, Renehan & Dost, LLP*, 329 Conn. 515, 527, 187 A.3d 1154 (2018) ("we agree with the defendants that the . . . case is nonjusticiable because no practical relief is available to the plaintiff insofar as the allegations in the declaratory judgment complaint demonstrate that it is nothing more than a collateral attack on the protective order imposed by the trial court [in a different case]").

The concern I have is that the inability of a trial court to grant practical relief is a necessary but not a sufficient condition to render a case moot. A court's inability to grant practical relief in any particular case can arise for countless reasons, most of which have nothing to do with mootness or justiciability. To illustrate the point, a claim for damages against the state is subject to dismissal for lack of subject matter jurisdiction due to sovereign immunity, but the case is neither moot nor nonjusticiable.[1] More broadly, practical relief is unavail-

---

[1] In the federal courts, the doctrines of justiciability and jurisdiction are not synonymous. As the United States Supreme Court has explained, "there is a significant difference between determining whether a federal court has jurisdiction of the subject matter and determining whether a cause over which a court has subject matter jurisdiction is justiciable." (Internal quotation marks omitted.) *Powell* v. *McCormack*, 395 U.S. 486, 512, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969); see also *Baker* v. *Carr*, 369 U.S. 186, 198, 82 S. Ct. 691, 7 L. Ed. 2d 663 (1962) (noting that "[t]he distinction between the two grounds [jurisdiction and justiciability] is significant"); *Rinsky* v. *Cushman & Wakefield, Inc.*, 918 F.3d 8, 18 (1st Cir.) (cautioning against confusion of "the very different concepts of subject matter jurisdiction and justiciability"), cert. denied, U.S. , 140 S. Ct. 455, 205 L. Ed. 2d 272 (2019); *Oryszak* v. *Sullivan*, 576 F.3d 522, 527 (D.C. Cir. 2009) (Ginsburg, J., concurring) ("[t]hat the nonjusticiability of a claim may not be waived does not render justiciability a jurisdictional issue, and this court has been careful to distinguish between the two concepts"); *Gross* v. *German Foundation Industrial Initiative*, 456 F.3d 363, 376 (3d Cir. 2006) ("[q]uestions of justiciability are distinct from questions of jurisdiction, and a court with jurisdiction over a claim should nonetheless decline to adjudicate it if it is not justiciable"). The justiciability doctrine, which derives from the case or controversy requirement in article three, § 2, of the United States constitution; *Flast* v. *Cohen*, 392 U.S. 83, 94, 88 S. Ct. 1942, 20 L. Ed. 2d 947 (1968);

Schoenhorn *v.* Moss

able as a matter of law in every case that is subject to dismissal on the basis of a dispositive motion. The most obvious example is a case in which a plaintiff's complaint fails to state a claim on which relief can be granted. No one would call such a case moot or nonjusticiable, even though it cannot be adjudicated because no relief can be granted. In order to determine whether a case is moot, and therefore not justiciable, we must ascertain *why* no practical relief can be granted.

Mootness, like the related justiciability doctrines of standing and ripeness,[2] is intended to ensure that "Con-

"limit[s] the business of federal courts to questions presented in an adversary context" and ensures that "the federal courts will not intrude into areas committed to the other branches of government." Id., 95.

Whether deliberate or by oversight, the conceptual distinction between justiciability and jurisdiction, to my knowledge, has not yet been recognized by the courts of this state. Our cases typically provide that "[j]usticiability . . . implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Chapman Lumber, Inc.* v. *Tager*, 288 Conn. 69, 86, 952 A.2d 1 (2008). Our reason for equating justiciability with jurisdiction is not obvious and warrants further consideration, particularly "because our state constitution contains no case or controversy requirement like that found in article three of the United States [c]onstitution . . . [and] unlike the federal courts, we do not concern ourselves with the question of whether our [justiciability] principles—e.g., standing, ripeness, mootness and political question—derive from the constitution itself or from prudential considerations." (Citation omitted; internal quotation marks omitted.) *CT Freedom Alliance, LLC* v. *Dept. of Education*, 346 Conn. 1, 26–27, 287 A.3d 557 (2023). The fact that our justiciability doctrine has "evolved under [the] common law"; (internal quotation marks omitted) id., 27; and is not rooted in constitutional limitations, raises the question whether it truly "implicate[s] a court's subject matter jurisdiction and its competency to adjudicate a particular matter." (Internal quotation marks omitted.) *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 254, 990 A.2d 206 (2010).

[2] In addition to mootness, standing, and ripeness, justiciability also includes the political question doctrine. See *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 254, 990 A.2d 206 (2010) ("justiciability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine" (internal quotation marks omitted)). "The political question doctrine itself is based on the principle of separation of powers . . . ." (Internal quotation marks omitted.) Id., 255.

Schoenhorn *v.* Moss

necticut courts will rule only on live controversies—
i.e., those in which the parties before us require resolu-
tion." *CT Freedom Alliance, LLC* v. *Dept. of Education*,
346 Conn. 1, 27, 287 A.3d 557 (2023). Standing, ripeness,
and mootness are "gatekeeper doctrines," each of which
"regulates a different dimension of entrance to the . . .
courts. The law of standing considers whether the plain-
tiff is the proper person to assert the claim, the law of
ripeness ensures that the plaintiff has not asserted the
claim too early, and the law of mootness seeks to pre-
vent the plaintiff from asserting the claim too late."
(Footnote omitted.) E. Lee, "Deconstitutionalizing Jus-
ticiability: The Example of Mootness," 105 Harv. L. Rev.
603, 606 (1992); see also *Warshak* v. *United States*, 532
F.3d 521, 525 (6th Cir. 2008) (claim is not justiciable
"when it is filed too early (making it unripe), when it
is filed too late (making it moot) or when the claimant
lacks a sufficiently concrete and redressable interest
in the dispute (depriving the plaintiff of standing)").
In one paradigmatic scenario, a case becomes moot
"during the pendency of an appeal, [when] events have
occurred that preclude an appellate court from granting
any practical relief through its disposition of the merits
. . . ." (Internal quotation marks omitted.) *Loisel* v.
*Rowe*, 233 Conn. 370, 378, 660 A.2d 323 (1995). Mootness
"fundamentally [is] temporal . . . ." *Gardner* v. *Mutz*,
962 F.3d 1329, 1337 (11th Cir. 2020).

In the present case, the fatal defect in the plaintiff's
claim is not temporal in nature; his action for a writ of
mandamus was not filed too early or too late to obtain
practical relief. The defect has nothing to do with *when*
the plaintiff's action was filed. Nor is *who* filed the
action the impediment to adjudication. To the contrary,
the controversy seems to be very much alive, adverse,
and contested: the plaintiff wants access to the sealed
transcript and the defendant, Melodie Moss, the chief
court reporter in the judicial district of Stamford-Nor-

Schoenhorn *v.* Moss

walk, refuses to release the transcript unless and until it is unsealed. The problem, instead, is that our collateral attack doctrine holds that relief is available only in the case in which the sealing order was filed.[3] The singular method and means by which relief must be sought (i.e., by filing a motion to intervene and open the family case to obtain an order vacating the sealing order) do not appear to me to affect the nature of the controversy between the parties. The problem seems not to involve either justiciability or jurisdiction but, instead, implicates the important prudential interests of maintaining "fairness to all interested parties, the orderly administration of justice, and [the] consistency and stability of judgments." Footnote 8 of the majority opinion.

The proper characterization of the defect at issue in the present case as jurisdictional, nonjusticiable, and/or prudential is not merely a matter of semantics without practical effect. The United States Supreme Court has cautioned against the "profligate" and indiscriminate description of all limitations on judicial authority as " 'mandatory and jurisdictional' "; *Arbaugh* v. *Y & H Corp.*, 546 U.S. 500, 510, 126 S. Ct. 1235, 163 L. Ed. 2d 1097 (2006); and for good reason. Such "drive-by jurisdictional rulings"[4] should be avoided precisely because labeling an issue as jurisdictional can have profound procedural implications that could affect the course, and even the outcome, of a case.[5] See *MOAC*

---

[3] The present case was filed in the judicial district of Hartford, but, to obtain relief, the plaintiff must file a motion to intervene and open the family case in which the transcript was sealed in the judicial district of Stamford-Norwalk. The problem is not one of venue, but, even if it were, it is well established that "[v]enue does not involve a jurisdictional question but rather a procedural one . . . ." (Internal quotation marks omitted.) *Fort Trumbull Conservancy, LLC* v. *New London*, 282 Conn. 791, 814, 925 A.2d 292 (2007).

[4] *Steel Co.* v. *Citizens for a Better Environment*, 523 U.S. 83, 91, 118 S. Ct. 1003, 140 L. Ed. 2d 210 (1998).

[5] I venture no opinion about whether any practical effects would flow from a determination that the defect in the present case was nonjurisdictional. It is clear that the action cannot be maintained as filed.

347 Conn. 501 AUGUST, 2023 523

Schoenhorn *v.* Moss

*Mall Holdings*, *LLC* v. *Transform Holdco*, *LLC*, U.S. , 143 S. Ct. 927, 936, 215 L. Ed. 2d 262 (2023) ("The 'jurisdictional' label is significant because it carries with it unique and sometimes severe consequences. An unmet jurisdictional precondition deprives courts of power to hear the case, thus requiring immediate dismissal. *Hamer* v. *Neighborhood Housing* [*Services*] *of Chicago*, [ U.S. , 138 S. Ct. 13, 17, 199 L. Ed. 2d 249 (2017)]. And jurisdictional rules are impervious to excuses like waiver or forfeiture. [*Boechler*, *P.C.* v. *Commissioner of Internal Revenue*, U.S. , 142 S. Ct. 1493, 1497, 212 L. Ed. 2d 524 (2022)]. Courts must also raise and enforce them sua sponte. [*Fort Bend County* v. *Davis*, U.S. , 139 S. Ct. 1843, 1849, 204 L. Ed. 2d 116 (2019)].").[6]

The plaintiff has challenged neither the mootness rubric as the basis for dismissal nor the characterization of the *Valvo* rule as jurisdictional in nature, and, therefore, I need not resolve those issues in this opinion. I raise them for future consideration in the appropriate case. In the meantime, I agree with the majority that, regardless of whether the defect in the plaintiff's action for a writ of mandamus is denominated jurisdictional, justiciable, or something else, the bottom line is that the plaintiff is precluded from collaterally attacking another court's sealing order in the present action. Accordingly, I concur in the judgment.

---

[6] I add one word of caution. The significance of the jurisdictional label should not be overlooked, but neither should it be overstated. " '[C]alling a rule nonjurisdictional does not mean that it is not mandatory.' " *Donnelly* v. *Controlled Application Review & Resolution Program Unit*, 37 F.4th 44, 55–56 (2d Cir. 2022), quoting *Gonzalez* v. *Thaler*, 565 U.S. 134, 146, 132 S. Ct. 641, 181 L. Ed. 2d 619 (2012).