******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE DANIEL N.*
(SC 19731)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson, Js.*

*Argued September 23—officially released December 6, 2016*

*Gregory T. D'Auria*, solicitor general, with whom were *Renee Bollier*, assistant attorney general, and, on the brief, *George Jepsen*, attorney general, and *Benjamin Zivyon* and *Michael J. Besso*, assistant attorneys general, for the appellant (petitioner).

*Michael D. Day*, for the appellee (respondent father).

*David J. Reich* filed a brief for the respondent mother.

*Opinion*

EVELEIGH, J. In this certified appeal,[1] the petitioner, the Commissioner of Children and Families,[2] appeals from the judgment of the Appellate Court reversing the judgment of the trial court terminating the parental rights of the respondent father, Jose N., to the minor child, Daniel N.[3] Specifically, the petitioner claims[4] that the Appellate Court improperly concluded that the failure to canvass the respondent prior to the commencement of the termination of parental rights trial in accordance with the rule promulgated pursuant to the exercise of our supervisory authority in *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015), applies retroactively to the present case and requires reversal. See *In re Daniel N.*, 163 Conn. App. 322, 333, 135 A.3d 1260 (2016). Because we conclude that application of the canvass rule announced in *In re Yasiel R.* to the present case would exceed the scope of the exercise of our supervisory authority in that case, we reverse the judgment of the Appellate Court.

The following facts and procedural history are relevant to our disposition of this appeal: "Daniel was born in 2006. He has two half siblings, born in 2012, who have a different father. Shortly after Daniel's birth, the Department of Children and Families (department) became involved with the family, and the department continued to be involved throughout a period of time extending to and after the birth of Daniel's half siblings, because of substance abuse, domestic violence, and mental health issues. On September 27, 2012, the court granted the petitioner's motion for an order of temporary custody for all three children, which led to an adjudication of neglect and Daniel's commitment to the care and custody of the petitioner. Daniel was returned to his mother's care on January 24, 2013, under an order of protective supervision. On September 17, 2013, the petitioner invoked a ninety-six hour hold on Daniel after being informed by a representative of the Family Based Recovery program that Daniel's mother was in a drug induced condition. The ninety-six hour hold was followed by a court order of temporary custody. The respondent was incarcerated at this time, and thus was not a potential resource for Daniel's care. The petitioner moved that the order of protective custody be modified to an order of commitment, which the court granted on October 8, 2013. Daniel has remained in the care and custody of the petitioner since that date." Id., 324–25.

"On December 26, 2013, the petitioner filed a petition to terminate the parental rights of Daniel's mother and the respondent, as well as the parental rights of the father of the half siblings. The termination of parental rights trial was held on February 3, 4 and 5, and June 24 and 25, 2015. The respondent was represented by counsel throughout the entire trial, and the respondent testified at trial. Several witnesses testified at trial, and

multiple exhibits were admitted into evidence in this fully contested case." Id., 325. The trial court did not canvass the respondent prior to trial or at any time prior to the rendering of judgment.

The trial court filed the memorandum of decision terminating the respondent's parental rights approximately two weeks after publication of our decision in *In re Yasiel R.* The respondent then appealed to the Appellate Court claiming that *In re Yasiel R.* required reversal of the trial court's judgment because he did not receive a canvass before trial. Id., 333. The Appellate Court agreed, reversed the judgment of the trial court, and remanded the case for a new trial. Id., 337. This certified appeal followed.

The petitioner claims that the Appellate Court improperly concluded that this court's holding in *In re Yasiel R.* mandated reversal in the present case. Specifically, the petitioner claims that our holding in *In re Yasiel R.* was limited and that nothing this court said in that case requires a reversal in cases in which the trial concluded prior to the announcement of the canvass rule. The petitioner also claims that, even if the canvass rule applies in the present case, automatic reversal would be inappropriate and reversal should be considered on a case-by-case basis. On the other hand, the respondent claims that the Appellate Court properly reversed the trial court's judgment because the canvass rule applies retroactively to trials concluded after *In re Yasiel R.* and the failure to provide the canvass in the present case required automatic reversal. In support of this conclusion, the respondent claims that the general rule is that judicial decisions apply retroactively and our decision to reverse the judgment in *In re Yasiel R.* is a retroactive application of the canvass rule. Additionally, the respondent claims that the failure to provide the canvass requires reversal because the basis for reversal is the failure to provide the canvass, not "the way in which the case is ultimately tried." Because we conclude that the exercise of our supervisory authority in *In re Yasiel R.* is not applicable to the present case, we reverse the judgment of the Appellate Court.

We begin with a review of the principles regarding our supervisory authority. "It is well settled that [a]ppellate courts possess an inherent supervisory authority over the administration of justice. . . . Supervisory powers are exercised to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole. . . . Under our supervisory authority, we have adopted rules intended to guide the lower courts in the administration of justice . . . ." (Internal quotation marks omitted.) *State* v. *Elson*, 311 Conn. 726, 764–65, 91 A.3d 862 (2014). Our "supervisory authority is not a form of free-floating justice, unteth-

ered to legal principle. . . . Rather, the rule invoking our use of supervisory power is one that, as a matter of policy, is relevant to the perceived fairness of the judicial system as a whole, most typically in that it lends itself to the adoption of a procedural rule that will guide lower courts in the administration of justice in all aspects of the [adjudicatory] process. . . . Indeed, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of [this court's] supervisory powers." (Citations omitted; internal quotation marks omitted.) *In re Yasiel R.*, supra, 317 Conn. 790.

Generally, cases in which we have invoked our supervisory authority for rule making have fallen into two categories.[5] See *State* v. *Carrion*, 313 Conn. 823, 850, 100 A.3d 361 (2014); *State* v. *Elson*, supra, 311 Conn. 768 n.30. "In the first category are cases wherein we have utilized our supervisory power to articulate a procedural rule as a matter of policy, either as [a] holding or dictum, but without reversing [the underlying judgment] or portions thereof." *State* v. *Elson*, supra, 768 n.30. "We invoke our supervisory authority in such a case . . . not because the use of that authority is necessary to ensure that justice is achieved in the particular case. Rather, we have determined that the [appellant] received a fair trial and therefore is not entitled to the extraordinary remedy of a new trial. Nevertheless, it may be appropriate, in such circumstances, to direct our trial courts to conduct themselves in a particular manner so as to promote fairness, both perceived and actual, in *future* cases." (Emphasis in original.) *State* v. *Carrion*, supra, 851–52. "In the second category are cases wherein we have utilized our supervisory powers to articulate a rule or otherwise take measures necessary to remedy a perceived injustice with respect to a preserved or unpreserved claim on appeal." *State* v. *Elson*, supra, 768 n.30. In other words, in the first category of cases we employ only the rule-making power of our supervisory authority; in the second category we employ our rule-making power *and* our power to reverse a judgment. *State* v. *Carrion*, supra, 851–52.

In light of our observation that "[o]ur cases have not always been clear as to the reason for [the] distinction" between the two categories of cases; *State* v. *Diaz*, 302 Conn. 93, 107 n.11, 25 A.3d 594 (2011); we recently clarified the distinction between the two categories. See *State* v. *Carrion*, supra, 313 Conn. 849–53. In *Carrion*, we observed that the salient distinction between these two categories of cases is that in one category we afford a remedy and in the other we do not. Id., 851–52. In the second category of cases, where we exercise both powers under our supervisory authority, the party "must establish that the invocation of our supervisory authority is truly necessary because [o]ur supervisory powers are not a last bastion of hope for every untenable appeal." (Internal quotation marks omitted.)

Id., 851. In almost all cases, "[c]onstitutional, statutory and procedural limitations are generally adequate to protect the rights of the [appellant] and the integrity of the judicial system." (Internal quotation marks omitted.) *State* v. *Coward*, 292 Conn. 296, 315, 972 A.2d 691 (2009). "[O]nly in the rare circumstance [in which] these traditional protections are inadequate to ensure the fair and just administration of the courts" will we exercise our supervisory authority to reverse a judgment. (Internal quotation marks omitted.) *State* v. *Carrion*, supra, 851. In such a circumstance, "the issue at hand, while not rising to the level of a constitutional violation, is nonetheless of [the] utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Internal quotation marks omitted.) Id. Although these standards are demanding, they are also "flexible and are to be determined in the interests of justice." (Internal quotation marks omitted.) *State* v. *Connor*, 292 Conn. 483, 518 n.23, 973 A.2d 627 (2009).

In contrast, in cases in which we invoke our supervisory authority for rule making only, the case need not present extraordinary circumstances to justify the invocation of our supervisory authority to announce the rule. *State* v. *Carrion*, supra, 313 Conn. 852. Rather, "we are free to invoke our supervisory authority prospectively when prudence and good sense so dictate." Id. "[B]ecause we are not imposing *any* remedy in the case—let alone the extraordinary remedy of a new trial—there is no need for this court to justify the use of extraordinary measures prior to exercising its supervisory authority." (Emphasis in original.) Id. Implicit in this rationale for applying a lower standard in cases in which we exercise our supervisory authority to engage in rule making alone is that such an action will not disturb any countervailing interests, whether in the case at hand or in any other case in which the trial has concluded. The bench, the bar, and the public at large will receive notice of the new procedural rule with the release of the decision and will have the opportunity to conform their conduct accordingly.

When we exercise our supervisory authority to reverse a judgment, we are mindful of the interests of the opposing party in the case. In these cases, the opposing party substantially complied with the law. See, e.g., *In re Yasiel R.*, supra, 317 Conn. 787–88 (finding failure to canvass respondent did not violate procedural due process rights). Indeed, in our earliest supervisory authority case, we recognized that a reversal "in the exercise of a court's supervisory authority must not be undertaken without balancing other interests which may be involved." *State* v. *Ubaldi*, 190 Conn. 559, 572, 462 A.2d 1001, cert. denied, 464 U.S. 916, 104 S. Ct. 280, 78 L. Ed. 2d 259 (1983). When we reverse a judgment, the opposing party must retry the case and contend with the "practical problems of memory loss

and unavailability of witnesses after much time has elapsed . . . ." (Internal quotation marks omitted.) *State* v. *Payne*, 260 Conn. 446, 464, 797 A.2d 1088 (2002). In criminal cases, victims will have to endure another trial. *State* v. *Ubaldi*, supra, 572. In termination of parental rights cases, permanence for the minor child is further delayed. See *In re Davonta V.*, 285 Conn. 483, 495, 940 A.2d 733 (2008) ("[t]ermination of a biological parent's rights, by preventing further litigation with that parent, can preserve the stability a child has acquired in a successful foster placement and, furthermore, move the child closer toward securing permanence by removing barriers to adoption"). These consequences are realized despite the fact that the opposing party rightfully relied upon then prevailing law. See *In re Yasiel R.*, supra, 317 Conn. 801–802 (*Zarella, J.*, concurring and dissenting). There are indeed "fairness and due process concerns that are raised when a party is subjected to a rule of which it had no prior notice." Id. (*Zarella, J.*, concurring and dissenting). It is only after weighing the countervailing interests of the parties against whom the new rule is applied and the interests of the party seeking relief that we apply the rule in a particular case and grant relief to the party seeking it.

With these principles in mind, we review the exercise of our supervisory authority in *In re Yasiel R.* In that case, after rejecting the respondent's claim that the trial court's failure to provide a canvass prior to submitting her case on the papers violated her procedural due process rights, this court concluded that such a canvass would enhance the "confidence in the integrity of the judicial system." Id., 794. In considering the contours of the canvass requirement, we recognized the petitioner's concerns that such a canvass could impact trial strategy and the attorney-client relationship. Id., 793–94. As a result, we utilized our rule-making power under our supervisory authority to articulate a rule that would apply in every case, not just cases in which the parent submits to a trial on the papers in the manner that the respondent had in that case. Id., 794. If this rule making alone had been the extent of the exercise of our supervisory authority in *In re Yasiel R.*, it would not have required a finding of extraordinary circumstances because the rule applies prospectively. See *State* v. *Carrion*, supra, 313 Conn. 852. We did, however, find exceptional circumstances in *In re Yasiel R.*, namely, the fact the respondent submitted herself to a summary procedure without any assurance that she understood the risks of such a course of action. *In re Yasiel R.*, supra, 317 Conn. 772–74. Consequently, we expanded the scope of the exercise of our supervisory authority enough to apply the canvass rule in that case and grant relief to the respondent in that case. Our application of the canvass rule to the facts of *In re Yasiel R.* was based on a careful evaluation of the particular facts and balancing of equities in that case.

Having considered the holding and the rationale of *In re Yasiel R.*, we conclude that the rule is not applicable in the present case. Our decision to expand the scope of our supervisory authority in *In re Yasiel R.* to apply the canvass rule and grant relief was predicated upon the extraordinary circumstances in that case and should not be construed to reach all other termination of parental rights cases in which the trial has concluded. Such an automatic expansion of the scope of the exercise of our rule-making power to reach all other cases in which the trial has already concluded would disturb the countervailing interests of the party or parties against whom the rule would be imposed without proper consideration of the countervailing interests of those parties.

This is not to say that there are no circumstances in which we would apply the canvass rule to a case in which the trial has concluded. Indeed, in view of our analysis in *In re Yasiel R.*, if there is a case that presents the same essential procedural history—namely, a case where the respondent submitted himself or herself to a summary procedure without any assurance that he or she understood the risks of such a course of action, the trial concluded before we announced our decision in *In re Yasiel R.*, and the respondent timely appealed— we would apply the canvass rule to that case in order to grant relief on the basis of the precedential value of *In re Yasiel R.* This, however, would apply only to cases in which the trial has concluded and the respondent's right of appeal has not been exhausted or waived. In such a case, the rationale and holding of *In re Yasiel R.*, consistent with the principles underlying the exercise of our supervisory authority, would require reversal.

The conclusion reached by the Appellate Court illustrates the flaw in the respondent's claim that the canvass rule should apply in the present case because we granted relief in *In re Yasiel R.* This was a fully contested trial. The respondent, through counsel, cross-examined each of the five witnesses presented by the petitioner.[6] In addition, the respondent's counsel cross-examined one of the mother's witnesses and the mother herself. The testimony of the respondent himself reveals that he fully grasped the nature and consequence of the proceedings. The respondent testified that he knew that the petitioner was asking the court to terminate his parental rights. The respondent testified that he "would do anything in [his] power" to maintain his relationship with Daniel. The respondent explained that he rescheduled his cancer surgery because he "thought [testifying] was a lot more important." Although it would have been preferable as a matter of policy for the respondent in the present case to have received a canvass before trial, the fact that he did not receive it in the present case is not the kind of extraordinary circumstance that would have warranted relief. See *In*

*re Yasiel R.*, supra, 317 Conn. 793. Consequently, the interpretation of the exercise of supervisory authority in *In re Yasiel R.* urged by the respondent and adopted by the Appellate Court does not remedy any apparent injustice for the respondent but rather works an injustice upon the petitioner and Daniel in the form of unnecessary delay and wasted resources. Such a result is flatly inconsistent with the principles that underlie the exercise of supervisory authority.

The respondent claims, and the Appellate Court concluded, that application of the three part test for nonretroactive application of judicial decisions discussed in *Neyland* v. *Board of Education*, 195 Conn. 174, 179, 487 A.2d 181 (1985),[7] compels retroactive application of the canvass rule to the present case. *In re Daniel N.*, supra, 163 Conn. App. 335.[8] Because, however, we are delineating the scope of the exercise of our supervisory authority, which by its very nature is prerogative, we are not bound by the usual test for retroactivity. Rather, the precise scope of the exercise of our supervisory authority is guided by the "unifying principle" of the "integrity of the judicial system . . . ." (Internal quotation marks omitted.) *In re Yasiel R.*, supra, 317 Conn. 790. On the basis of the foregoing, we conclude that our holding in *In re Yasiel R.* does not mandate reversal in the present case.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to render judgment affirming the judgment of the trial court.

In this opinion ROGERS, C. J., and PALMER, McDONALD, ESPINOSA and ROBINSON, Js., concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

* This case originally was scheduled to be argued before a panel of this court consisting of Chief Justice Rogers and Justices Palmer, Zarella, Eveleigh, McDonald, Espinosa and Robinson. Although Justice Espinosa was not present when the case was argued before the court, she has read the briefs and appendices, and listened to a recording of the oral argument prior to participating in this decision.

[1] We granted the petition by the Department of Children and Families for certification to appeal limited to the following question: "Did the Appellate Court correctly reverse the trial court's judgment ordering the termination of parental rights by concluding that this court's decision in *In re Yasiel R.*, 317 Conn. 773, 120 A.3d 1188 (2015), controlled the result of [the present] case?" *In re Daniel N.*, 323 Conn. 928,      A.3d      (2016).

[2] Because the Commissioner of Children and Families acts on behalf of the Department of Children and Families, references to the petitioner include both the Department of Children and Families and the Commissioner of Children and Families.

[3] The trial court also terminated the parental rights of the respondent mother, Nadine D. Her separate petition for certification to appeal was denied. *In re Daniel N.*, 321 Conn. 908, 135 A.3d 280 (2016). The respondent mother is, however, a party to the present appeal and has filed a brief. Nevertheless, the present appeal pertains only to the parental rights of the respondent father. For the sake of simplicity, we refer to the respondent father as the respondent throughout this opinion.

[4] We note that the counsel for the minor child has adopted the brief of

the petitioner.

[5] We note that supervisory authority has been invoked for purposes other than rule making. See, e.g., *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 155, 84 A.3d 840 (2014) (supervisory authority permits reviewing court to raise unpreserved issue on appeal sua sponte); *State* v. *Reid*, 277 Conn. 764, 778, 894 A.2d 963 (2006) (invoking supervisory authority to hear untimely appeal); *State* v. *Payne*, 260 Conn. 446, 451–52, 797 A.2d 1088 (2002) (invoking supervisory authority in order "to redress repeated and deliberate misconduct by a prosecutor seeking to increase the likelihood of conviction even though that conduct does not necessarily require reversal as a due process violation").

[6] The petitioner presented one witness, a social worker, on two separate occasions, once on February 3, 2015, and once more over the course of June 24 and 25, 2015. While the respondent's counsel declined to cross-examine the witness on February 3, he did cross-examine the witness on June 25.

[7] "In *Neyland* v. *Board of Education*, [supra, 195 Conn. 179], we discussed the [three part] test set out in *Chevron Oil Co.* v. *Huson*, 404 U.S. 97, 92 S. Ct. 349, 30 L. Ed. 2d 296 (1971), for determining whether a decision must be applied prospectively only. A common-law decision will be applied nonretroactively only if: (1) it establishes a new principle of law, either by overruling past precedent on which litigants have relied . . . or by deciding an issue of first impression whose resolution was not clearly foreshadowed . . . (2) given its prior history, purpose and effect, retrospective application of the rule would retard its operation; and (3) retroactive application would produce substantial inequitable results, injustice or hardship." (Citation omitted; internal quotation marks omitted.) *Ostrowski* v. *Avery*, 243 Conn. 355, 378 n.18, 703 A.2d 117 (1997).

[8] The respondent also asserts that the fact that the canvass rule we announced in *In re Yasiel R.* is to apply to *all* parents before trial in a termination of parental rights case demonstrates that it should be applied in the present case. To the extent that this claim forms a basis for retroactive application, we reject it. We require the canvass rule to apply to all parents, not regardless of whether the termination trial concluded prior to the release of our decision in that case, but rather regardless of whether the parent is represented by counsel or whether evidence presented is contested. *In re Yasiel R.*, supra, 317 Conn. 794.

---