******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# IN RE ANDREW C.*
## (SC 21078)
## (SC 21079)

Mullins, C. J., and D'Auria, Ecker, Alexander,
Dannehy and Bright, Js.

*Syllabus*

The intervening foster parents and the minor child, A, filed separate appeals, on the granting of certification, from the judgment of the Appellate Court. In 2017, the petitioner, the Commissioner of Children and Families had obtained an order of temporary custody and placed A in the care of the foster parents. In response to the respondent father's motion to revoke A's commitment years later, the foster parents filed a motion to intervene, which was granted in 2020. In 2021, a court denied the respondent's motion to revoke commitment, granted the foster parents' motion to transfer guardianship of A to the foster parents, and rendered judgment thereon. In 2023, the Appellate Court decided *In re Ryan C.* (220 Conn. App. 507), holding that nonrelative foster parents are prohibited by statute (§ 46b-129 (p)) from intervening in neglect proceedings. In response to *In re Ryan C.*, the respondent filed in 2023 a motion to open and vacate the 2021 judgment transferring guardianship of A to the foster parents on the ground that the court in *In re Ryan C.* determined that foster parents do not have standing to intervene and, consequently, that the court in 2021 had no subject matter jurisdiction to entertain the foster parents' motion to transfer guardianship, rendering the resulting 2021 judgment void. The trial court agreed with the respondent, granting the respondent's motion to open, vacating the order granting the foster parents' motion to intervene, and vacating the judgment transferring guardianship of A to the foster parents. The Appellate Court thereafter upheld the trial court's decision to grant the motion to open and vacate, reasoning that, in light of *In re Ryan C.*, the court's lack of subject matter jurisdiction in 2021 was entirely obvious so as to render that court's judgment transferring guardianship invalid. In the present appeals, the foster parents and A claimed that the Appellate Court had incorrectly concluded that there was a lack of subject matter jurisdiction to grant the foster parents' motion to intervene. While the present appeals were pending, this court decided *In re Jewelyette M.* (351 Conn. 51), which overruled *In re Ryan C.* in concluding that § 46b-129 (p) does not limit the trial court's authority to

---

*In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the court.

permit a nonrelative foster parent to intervene in the dispositional phase of neglect proceedings. *Held*:

The Appellate Court improperly upheld the trial court's decision to grant the respondent's 2023 motion to open and vacate the 2021 judgment transferring guardianship, and, accordingly, this court reversed the Appellate Court's judgment and remanded the case with direction to reverse the trial court's decision to grant the respondent's motion to open and vacate, and to reinstate the earlier order granting the foster parents' motion to intervene and the 2021 judgment transferring guardianship of A to the foster parents.

This court having determined in *In re Jewelyette M.* that § 46b-129 (p) does not prohibit courts from granting foster parents permission to intervene in neglect proceedings, the respondent's challenge to the court's authority to grant the foster parents' motion to intervene and to transfer guardianship of A to them in 2021 did not implicate subject matter jurisdiction.

Insofar as the court had jurisdiction to grant the foster parents' motion to intervene and their motion to transfer guardianship in 2021, the trial court lacked authority to open the 2021 judgment transferring guardianship more than four months after notice of that judgment was sent on the ground that it was entirely obvious that the court that rendered the 2021 judgment was without subject matter jurisdiction to do so.

Argued April 9—officially released May 19, 2025**

### *Procedural History*

Petition by the Commissioner of Children and Families to adjudicate the respondents' minor child neglected, brought to the Superior Court in the judicial district of New Britain, Juvenile Matters, where the court, *Hon. Barbara M. Quinn*, judge trial referee, exercising the powers of the Superior Court, rendered judgment adjudicating the minor child neglected and committing the minor child to the custody the petitioner; thereafter, the court, *C. Taylor, J.*, granted the motion filed by the foster parents of the minor child to intervene; subsequently, the court, *C. Taylor, J.*, granted the foster parents' motion to transfer guardianship of the minor child, denied the respondent father's motion to revoke the commitment, and rendered judgment thereon; thereafter,

---

** May 19, 2025, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

the court, *Daniels*, *J.*, granted the respondent father's motion to open and vacate the judgment granting the foster parents' motion to transfer guardianship, and the minor child and the foster parents filed separate appeals with the Appellate Court, *Alvord*, *Cradle* and *Westbrook*, *Js.*, which affirmed the trial court's decision to open and vacate the judgment granting the foster parents' motion to transfer guardianship, and the minor child and the foster parents, on the granting of certification, filed separate appeals with this court. *Reversed*; *judgment directed*.

*Matthew C. Eagan*, assigned counsel, for the appellant in Docket No. SC 21078 (minor child).

*Dana M. Hrelic*, with whom was *Stacie L. Provencher*, for the appellants in Docket No. SC 21079 and appellees in Docket No. SC 21078 (foster parents).

*Evan O'Roark*, deputy solicitor general, with whom, on the brief, was *William Tong*, attorney general, for the appellee in Docket Nos. SC 21078 and SC 21079 (petitioner).

*Benjamin M. Wattenmaker*, for the appellee in Docket Nos. SC 21078 and SC 21079 (respondent father).

*Opinion*

ALEXANDER, J. Under General Statutes § 52-212a,[1] courts lack the power to open a judgment unless a motion to open is filed within four months of the date that notice of the judgment was issued. One exception to this rule is when the trial court's lack of subject matter jurisdiction was entirely obvious at the time of

---

[1] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which the notice of judgment or decree was sent. . . ."

the judgment. See, e.g., *Schoenhorn* v. *Moss*, 347 Conn. 501, 515, 298 A.3d 236 (2023). The dispositive issue in these certified appeals is whether the Appellate Court correctly determined that the trial court lacked subject matter jurisdiction to grant a motion by foster parents for permissive intervention in the dispositional phase of a neglect proceeding. In 2023, the respondent father, Chester C. (respondent), filed a motion to open and vacate a 2021 judgment transferring guardianship of his minor son, Andrew C. (Andrew), to the intervening foster parents, Morgan A. and Alberto A. The motion was filed on the basis of *In re Ryan C.*, 220 Conn. App. 507, 299 A.3d 308, cert. denied, 348 Conn. 901, 300 A.3d 1166 (2023), in which the Appellate Court held that General Statutes § 46b-129 (p)[2] prohibits foster parents from intervening in such proceedings. Id., 525–26. The trial court granted the respondent's motion and vacated the judgment transferring guardianship. The court reasoned that, because the foster parents were statutorily prohibited from intervening, the trial court lacked jurisdiction to grant their motion to intervene, and, therefore, the resulting judgment transferring guardianship of Andrew to them was void ab initio. The Appellate Court upheld the trial court's decision on the respondent's motion; *In re Andrew C.*, 229 Conn. App. 51, 71, 326 A.3d 575 (2024); and we granted Andrew's and the foster parents' separate petitions for certification to appeal.[3] While their appeals were pending, this court

[2] General Statutes § 46b-129 (p) provides in relevant part: "A foster parent, prospective adoptive parent or relative caregiver who has cared for a child or youth shall have the right to be heard and comment on the best interests of such child or youth in any proceeding under this section which is brought not more than one year after the last day the foster parent, prospective adoptive parent or relative caregiver provided such care. . . ."

Although § 46b-129 (p) has been amended by the legislature since the events underlying this case; see, e.g., Public Acts 2024, No. 24-126, § 6; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[3] We granted Andrew's petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude that the

decided *In re Jewelyette M.*, 351 Conn. 511, 332 A3d 207 (2025), which overruled *In re Ryan C.*, concluding that "the legislature did not intend § 46b-129 (p) to prohibit a trial court from granting permissive intervention to a foster parent when appropriate." Id., 515. Our decision in *In re Jewelyette M.*, which held that § 46b-129 (p) does not limit the trial court's authority to permit a foster parent to intervene in accordance with Practice Book § 35a-4 (c);[4] id., 535; controls the outcome of these appeals, and, accordingly, we reverse the Appellate Court's judgment.

lack of subject matter jurisdiction was 'entirely obvious' at the time of the judgment transferring guardianship to the foster parents so as to render the judgment void ab initio?" And (2) "[i]f the answer to the first question is 'yes,' does the minor child's interest in the finality of judgments outweigh any claims implicating subject matter jurisdiction?" *In re Andrew C.*, 350 Conn. 932, 326 A.3d 1107 (2024).

We granted the foster parents' petition for certification to appeal, limited to the following issues: (1) "Did the Appellate Court correctly conclude in *In re Ryan C.* . . . that the limitation on a foster parent's right to participate in neglect proceedings contemplated by . . . § 46b-129 (p) implicates subject matter jurisdiction rather than a trial court's statutory authority?" (2) "Did the Appellate Court correctly conclude that the lack of subject matter jurisdiction was 'entirely obvious' at the time of the judgment transferring guardianship to the foster parents so as to render that judgment void ab initio?" And (3) "[d]id the Appellate Court correctly conclude that, even if a lack of subject matter jurisdiction at the time of the judgment transferring guardianship to the foster parents was not 'entirely obvious,' there is a strong policy interest in revisiting the judgment two years later?" *In re Andrew C.*, 350 Conn. 931, 326 A.3d 1107 (2024).

[4] Practice Book § 35a-4 (c) provides in relevant part: "Other persons unrelated to the child or youth by blood, marriage or law . . . may move to intervene in the dispositional phase of the case, and the judicial authority may grant said motion if it determines that such intervention is in the best interests of the child or youth or in the interests of justice."

Subsection (d) of that section further provides: "In making a determination upon a motion to intervene, the judicial authority may consider: the timeliness of the motion as judged by the circumstances of the case; whether the movant has a direct and immediate interest in the case; whether the movant's interest is not adequately represented by existing parties; whether the intervention may cause delay in the proceedings or other prejudice to the existing parties; the necessity for or value of the intervention in terms of resolving the controversy before the judicial authority; and the best interests of the child or youth." Practice Book § 35a-4 (d).

The record reveals the following undisputed facts and procedural history. The Department of Children and Families (department) first became involved with the respondent's family in 2013 due to issues of substance abuse. When Andrew was born in November, 2017, he tested positive for marijuana, opioids, and cocaine. When he was seventeen days old, the petitioner, the Commissioner of Children and Families (commissioner), obtained an order of temporary custody and placed Andrew in the care of his foster parents, with whom he has resided ever since.

Andrew has two older siblings, Madison, born in November, 2013, and Ryan, born in December, 2015. Madison and Ryan were removed from their parents' home in May, 2017, pursuant to an order of temporary custody following reports that the children were living in deplorable conditions. The children were placed in the care of their paternal grandparents but were removed after only two days due to the grandparents' refusal to comply with department regulations concerning foster parent training. The children were then placed in the care of Jeanette P., a nonrelative foster mother. The commissioner filed neglect petitions as to all three children, after which the respondent and the respondent mother, Patricia K., entered pleas of nolo contendere.

On November 30, 2017, in accordance with the plea agreements, all three children were adjudicated neglected and committed to the care and custody of the commissioner. On February 1, 2019, the commissioner filed petitions to terminate the parental rights of both parents, alleging a failure to achieve a sufficient degree of personal rehabilitation. On August 16, 2019, the commissioner withdrew the petition as to the respondent.

On December 4, 2019, the respondent filed a motion to revoke Andrew's commitment. In response, Andrew's foster parents filed a motion to intervene pursuant to

Practice Book § 35a-4. Neither the commissioner nor the respondent objected to the motion, which the trial court, *C. Taylor, J.*, granted on January 23, 2020. Thereafter, the respondent withdrew his motion to revoke commitment. On July 16, 2020, the department filed a permanency plan recommending Andrew's reunification with the respondent. Both Andrew and the foster parents objected to the department's permanency plan on the ground that it was not in Andrew's best interest, and, on July 20, 2020, the foster parents filed a motion to revoke commitment and to have guardianship of Andrew transferred to them (motion to transfer guardianship).

On October 22, 2020, when Andrew was nearly three years old, the respondent filed another motion to revoke commitment. The commissioner then filed a motion for review of a new permanency plan recommending that guardianship of Andrew be transferred to the foster parents. The parties agreed to consolidate their respective motions for trial, which commenced on January 28, 2021. Over eight nonconsecutive trial dates, the court heard testimony from numerous witnesses, including Derek A. Franklin, a licensed clinical psychologist who conducted several court-ordered evaluations; Mary Dineen Elovich, Andrew's therapist; Andrew's paternal grandfather; Morgan A.; and various department social workers and contracted service providers. Both Franklin and Elovich testified that, for various reasons, it was in Andrew's best interest to remain in the care of his foster parents, to whom he was deeply attached, psychologically and emotionally, and whom he considered his parents. Elovich testified that placing Andrew with the respondent would be "disastrous."

At the conclusion of the trial, the court denied the respondent's motion to revoke commitment, approved the department's permanency plan, and granted the foster parents' motion to transfer guardianship of Andrew.

In a memorandum of decision dated December 2, 2021, the court found "the testimony and opinions expressed by . . . Franklin and Elovich . . . to be the most persuasive. [The respondent] is not in a position to assume the responsibilities of independently caring for Andrew. To put this forth as a viable plan is a fallacy. The care for Andrew would fall [on] the paternal grandparents. The court is perplexed as to why [the department] would be willing to place Andrew in the paternal grandparents' hands after having removed his older siblings only two days after putting them in [their] care [in 2017]." The court further found that "the foster parents are capable of providing appropriate and nurturing care for Andrew, as they have done for his entire life, save his first seventeen days," whereas the respondent "is not capable of providing appropriate and nurturing care for Andrew; nor has he ever done so in the past." In reaching its determination, the court acknowledged the department's preference for placing children with relatives, stating that it "understands and respects these policies. However, each child is a different being, with their own needs and considerations. This is a situation [in which] a 'one size fits all' outlook will increase the chances of causing this child substantial harm." The court concluded by expressing hope that the respondent and the foster parents would set aside any differences they might have and work together in support of Andrew, who, the court observed, "is a human being, filled with his own hopes, joys and fears. He is not a piece of property." The court further stated that, in the coming days, it would issue new specific steps for the respondent to follow and a visitation schedule for him and Andrew going forward.

In a separate action occurring around the same time, the respondent filed a motion to revoke the commitment of Andrew's brother, Ryan. See *In re Ryan C.*, supra, 220 Conn. App. 514. In response, Jeanette P.,

Ryan's foster mother, filed a motion to intervene; id.; which the trial court granted. Id., 516. She also filed a motion to have the guardianship of Ryan transferred to her. Id., 514. A trial on the respondent's and Jeanette P.'s respective motions concluded on June 8, 2022. Id., 516–17. On October 5, 2022, the court granted Jeanette P.'s motion to transfer guardianship, denied the respondent's motion to revoke commitment, and rendered judgment thereon. Id., 517. The respondent appealed from that judgment to the Appellate Court, claiming that the trial court improperly had allowed Jeanette P. to intervene and file a motion to transfer guardianship of Ryan. Id., 510–11. The Appellate Court agreed and reversed the trial court's judgment. Id., 511, 548.

As this court explained in *In re Jewelyette M.*, the Appellate Court in *In re Ryan C.* concluded that, "although Practice Book § 35a-4 (c) authorizes the trial court to grant permissive intervenor status to nonrelatives, § 46b-129 (p) precludes the intervention of nonrelative *foster parents*." (Emphasis in original; footnote omitted.) *In re Jewelyette M.*, supra, 351 Conn. 529–30. "In reaching its [conclusion], the Appellate Court relied principally on a 2001 amendment to General Statutes (Rev. to 2001) § 46b-129 (o) (now subsection (p)). . . . The court observed that, '[p]rior to the legislature's adoption of No. 01-142, § 8, of the 2001 Public Acts (P.A. 01-142), § 46b-129 [provided] that "[a] foster parent shall have standing for the purposes of this section in Superior Court in matters concerning the placement or revocation of commitment of a foster child living with such parent." . . . Significantly, in 2001, "standing" was replaced with "the right to be heard . . . ." P.A. 01-142, § 8.' . . . The court reasoned that, '[w]hen the legislature amends the language of a statute, it is presumed that it intended to change the meaning of the statute and to accomplish some purpose. . . . Therefore, by enacting P.A. 01-142, § 8, the legislature purposefully

limited a foster parent's participation in neglect proceedings to the right to be heard . . . .' " (Citations omitted.) *In re Jewelyette M.*, supra, 530. In light of its conclusion, the Appellate Court reversed the trial court's judgment and remanded the case with direction to deny Jeanette P.'s motion to intervene and also to dismiss her motion to transfer guardianship. *In re Ryan C.*, supra, 220 Conn. App. 548. The Appellate Court further ordered a new trial on the respondent's motion to revoke Ryan's commitment. Id. The record indicates that Ryan was returned to the respondent's care shortly thereafter.

On October 2, 2023, against this backdrop, the respondent filed the motion to open and vacate the transfer of guardianship (motion to open) that is the subject of this appeal. The respondent argued that the 2021 judgment granting the foster parents' motion to transfer guardianship should be vacated in light of the Appellate Court's decision in *In re Ryan C.* The respondent claimed that " 'foster parents do not have standing to intervene . . . as a matter of law,' and, as a result, the trial court 'did not have jurisdiction to consider the foster parents' motion to transfer guardianship' such that the 'order granting that motion is void ab initio.' The respondent argued that the holding in *In re Ryan C.* applied retroactively . . . because the issue of the foster parents' standing was jurisdictional, which can be raised at any time. . . .

"The court, *Daniels, J.*, held a hearing on the motion to open and, on January 3, 2024, issued a memorandum of decision in which it granted the respondent's motion to open, vacated the prior order granting the foster parents' motion to intervene, ordered that the foster parents' motion to intervene be denied, and dismissed their motion to transfer guardianship. The court further ordered that a new trial be held on the respondent's motion to revoke the commitment of Andrew. The court

held that the respondent's motion to open was timely because the respondent was challenging the foster parents' standing to intervene, which implicated the court's subject matter jurisdiction and could be raised at any time. . . . The court rejected the foster parents' arguments that the motion to open constituted an impermissible collateral attack on the guardianship judgment and that *In re Ryan C.* did not apply retroactively." (Footnote omitted.) *In re Andrew C.*, supra, 229 Conn. App. 57–58.

Before the Appellate Court, the foster parents claimed that the trial court improperly had granted the respondent's motion to open on the ground that it lacked subject matter jurisdiction over their motion to transfer guardianship. Id., 58–59. The Appellate Court disagreed and concluded that "the [trial] court's lack of subject matter jurisdiction to adjudicate [the foster parents'] motion to transfer guardianship of Andrew to [them] . . . was entirely obvious so as to render its judgment entirely invalid." Id., 62. In reaching that conclusion, the Appellate Court acknowledged that, to grant a motion to open a judgment outside the statutorily prescribed four month period for filing such a motion, the lack of jurisdiction must be "entirely obvious" in that the trial court's actions "must amount to a fundamental mistake that is so plainly beyond the court's jurisdiction that its entertaining the action was a manifest abuse of authority." (Internal quotation marks omitted.) Id., 61, quoting *Schoenhorn* v. *Moss*, supra, 347 Conn. 515; see also *Schoenhorn* v. *Moss*, supra, 515 ("[o]ur cases demonstrate that it is extraordinarily rare for a tribunal's jurisdiction to be so plainly lacking that it is entirely obvious [that a court lacks subject matter jurisdiction]" (internal quotation marks omitted)). Relying principally on its analysis in *In re Ryan C.*, the Appellate Court concluded that this stringent standard had been met. See *In re Andrew C.*, supra, 229 Conn. App. 62.

On appeal to this court, the foster parents and Andrew raise several claims. In light of our decision in *In re Jewelyette M.*, the only issue that we must address is whether the Appellate Court incorrectly concluded that the trial court lacked subject matter jurisdiction to grant the foster parents' motion to intervene. In *In re Jewelyette M.*, the primary issue was whether § 46b-129 (p) prohibits foster parents from intervening in neglect proceedings by conferring on them a "right to be heard and comment" in the proceedings. See *In re Jewelyette M.*, supra, 351 Conn. 514. We concluded that "the statute does not prohibit a trial court from permitting foster parents to intervene in such proceedings"; id.; and our reasons for doing so, which are fully applicable here, make clear that the respondent's challenge to the trial court's authority to transfer guardianship to the foster parents does not implicate subject matter jurisdiction. We therefore conclude that the Appellate Court incorrectly determined that the trial court lacked jurisdiction to grant the foster parents' motions to intervene and to transfer guardianship.

As we explained in *In re Jewelyette M.*, "[t]his court has long held that, in juvenile proceedings, questions of permissive intervention are committed to the sound discretion of the trial court . . . ." (Internal quotation marks omitted.) Id., 533; see id. (citing cases). The 2001 amendment to General Statutes (Rev. to 2001) § 46b-129 (o) (now § 46b-129 (p)) did not eliminate this discretion. As we stated in *In re Jewelyette M.*, "by affording foster parents an automatic right to be heard in neglect proceedings, subsection (p) of § 46b-129 [does not prohibit] foster parents from seeking permissive intervenor status to participate as parties in those proceedings. Intervention is not even mentioned in subsection (p), and nothing in the text of the provision can be understood to prohibit intervention. In fact, the express terms of the statute expand rather than restrict the rights of

foster parents within its scope (i.e., foster parents whose care of the child is ongoing or occurred not more than one year prior to the proceeding being brought) by providing them with an automatic right to be heard. This is a right . . . that most other people—including most family members—do not have. For this reason, the text of subsection (p) does not support a construction that imposes a limitation on the trial court's authority to permit a foster parent to intervene in accordance with Practice Book § 35a-4 (c)." Id., 534–35. Consequently, this court held that the plain language of § 46b-129 (p) did not limit a foster parent's standing to intervene permissively, which is available to any person under Practice Book § 35a-4.[5] Id., 535.

Although we concluded in *In re Jewelyette M.* that the intent of subsection (p) of § 46b-129 was clear and unambiguous; id.; we noted that, even if it were not, the legislative history did not support the Appellate Court's conclusion in *In re Ryan C.* that the 2001 amendment was intended to deprive trial courts of their authority to grant foster parents' requests for permis-

[5] The respondent argues that this court's holding in *In re Jewelyette M.* that "any person may intervene in a neglect proceeding under Practice Book § 35a-4, if the trial court finds that intervention is in the child's best interest, is unconstitutional under [*Troxel* v. *Granville*, 530 U.S. 57, 120 S. Ct. 2054, 147 L. Ed. 2d 49 (2000) as interpreted by *Roth* v. *Weston*, 259 Conn. 202, 789 A.2d 431 (2002)]," and, therefore, that *In re Jewelyette M.* should be overruled. This argument is without merit. Like the respondent in the present case, the dissent in *In re Jewelyette M.* asserted that our interpretation of § 46b-129 (p) and Practice Book § 35a-4 (c) threatened a parent's substantive due process right to family integrity. See *In re Jewelyette M.*, supra, 351 Conn. 554; see also id., 607 (*Elgo, J.*, dissenting). We disagreed and our reasons for doing so apply here. See id., 555–58. Of particular relevance to the present case, we noted that the dissent had failed to cite "a single case—from Connecticut or any other state—that supports the view that allowing permissive intervention by foster parents in the dispositional phase of a neglect proceeding implicates (much less threatens to infringe) a biological parent's constitutional rights. Indeed, this court has long recognized the authority of trial courts to grant this type of intervention." Id., 555. The respondent likewise cites no authority to support his constitutional claim.

sive intervention. Id., 536. To the contrary, "[t]he limited relevant legislative history of the 2001 amendment refutes the notion that the legislature had any intention of withdrawing the trial court's authority to allow foster parents to intervene in a proceeding within the purview of § 46b-129." Id. Rather, that legislative history confirms that § 46b-129 (p) is not intended to strip foster parents of the right to seek permissive intervention should circumstances warrant it. Id., 536–37.

Because the trial court in the present case had the authority to grant the foster parents' motion to intervene under Practice Book § 35a-4 and, therefore, to grant the foster parents' motion to transfer guardianship, the Appellate Court improperly upheld the trial court's decision to grant the respondent's untimely motion to open the 2021 judgment transferring guardianship of Andrew to the foster parents.[6] See, e.g., *Connecticut Light & Power Co.* v. *Lighthouse Landings, Inc.*, 279 Conn. 90, 103 n.14, 900 A.2d 1242 (2006) (trial court lacks authority to open judgment more than four months after notice of judgment).

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the trial court's decision to grant the respondent's motion to open and to remand the case to the trial court with direction to reinstate the order granting

_____

[6] The respondent also argues that this court should decline to apply *In re Jewelyette M.* retroactively. The rules governing retroactivity of judicial decisions, however, are inapplicable in the present context. This is so because *In re Jewelyette M.* did not establish a new principle of law or decide an issue of first impression whose resolution was not clearly foreshadowed. See, e.g., *In re Daniel N.*, 323 Conn. 640, 652 n.7, 150 A.3d 657 (2016). Moreover, the dispositive issue in this appeal requires this court to decide whether the Appellate Court correctly concluded that the trial court's purported lack of subject matter jurisdiction was entirely obvious at the time of the judgment transferring guardianship. We are not persuaded by the respondent's argument because our answer to that question, and analysis in support thereof, would be the same irrespective of *In re Jewelyette M.*

the foster parents' motion to intervene and the judgment transferring guardianship of Andrew to the foster parents.

In this opinion the other justices concurred.